UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEANDRE SPANN,<br>a/k/a "12" | 17 CR 611-9<br><br>Honorable Thomas M. Durkin |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits its sentencing position paper with respect to defendant Deandre Spann. For the reasons set forth below, the government requests this Court sentence defendant to a term of imprisonment within the applicable advisory Guideline range. As explained below, a sentence within the advisory guidelines range is appropriate in this case and such a sentence is sufficient, but not greater than necessary, to comply with the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).[1]

**I.    PROCEDURAL BACKGROUND**

On September 20, 2017, defendant was charged by way of an indictment, and then again on April 24, 2019, in a superseding indictment, with racketeering

---

[1] The information in this memorandum is derived, in part, from the superseding indictment, plea agreement, government's version of the offense, the presentence investigation report (PSR), the Probation Department's recommendation, as well as other information provided to the defense and Probation in connection with the preparation of the PSR. At sentencing, a district court may rely upon information contained in a PSR as long as the information is well supported and appears reliable. *United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004).

conspiracy, in violation of Title 18, United States Code, Section 1962(d) (Count One). Doc. ## 1 and 405, PSR § 1–23. On August 16, 2019, defendant pleaded guilty to Count One. Doc ##532, 533, PSR § 24. Defendant's sentencing hearing is set for January 6, 2020 at 2:00 p.m.

## II.   FACTUAL BACKGROUND

As set forth in the plea agreement, beginning no later than in or about the mid-1990s, and continuing until in or about 2017 in the Northern District of Illinois, Eastern Division, defendant knowingly conspired to conduct and participate in the conduct of the affairs of the Four Corner Hustlers street gang through a pattern of racketeering activity described in Count One of the superseding indictment, in violation of Title 18, United States Code, Section 1962(d). Doc. # 533. The Four Corner Hustlers street gang constituted an ongoing organization whose leadership, membership, and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. PSR § 26–34. The Four Corner Hustlers was a group of individuals associated in fact and therefore an "enterprise," as defined in Title 18, United States Code, Section 1961(d), that engaged in, and its activities affected, interstate commerce. As part of his membership in the Four Corner Hustlers, defendant agreed and knew that a co-conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Four Corner Hustlers street gang. While he was a member, defendant knowingly and intentionally conspired with the leadership, members, and associates of the Four Corner Hustlers to engage in a pattern of racketeering activity for and on behalf of the Four Corner Hustlers.

The purposes of the Four Corner Hustlers included, but were not limited to, the following: (a) enriching the leaders, members, and associates of the enterprise through the use of threats, intimidation, and violence, including, but not limited to, acts of murder, robbery, extortion, and the illegal trafficking of controlled substances; (b) promoting and enhancing the enterprise and its members' and associates' activities; (c) preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, and violence, including, but not limited to, acts of murder, attempted murder, aggravated battery with a firearm, and other acts of violence; (d) keeping victims and witnesses in fear of the enterprise and in fear of its leaders, members, and associates through acts and threats of violence; and (e) taking steps designed to prevent law enforcement's detection of the enterprise's criminal activities. For example, during a court-authorized intercepted telephone call on October 21, 2012, defendant and co-defendant Labar Spann discussed the sale of narcotics on Adams and Keeler in Chicago, Illinois. Doc. # 533

Defendant, in the plea agreement, acknowledged that the Four Corner Hustlers were an enterprise engaged in and affecting interstate commerce, including but not limited to the purchase, acquisition, transfer, use, maintenance, concealment, and disposal of firearms, including across state lines, and the purchase, sale, and distribution of heroin, crack cocaine, cocaine and marijuana that had moved in or affected interstate commerce. Doc. # 533. In particular, defendant knew that the Four Corner Hustlers were involved in drug trafficking and defendant agreed to participate in these and other related activities in support of the enterprise. For

3

example, during court-authorized intercepted telephone calls in December 2012, defendant reported to co-defendant Labar Spann that the police had searched Four Corner Hustler Sammie Booker's residence and recovered three firearms, and co-defendant Labar Spann responded by explaining that they had warned co-defendant Sammie Booker to hide the guns someplace else because the police would be coming to search his residence. In later calls, defendant and co-defendant Labar Spann discussed co-defendant Booker's pending criminal case and the need to raise money for Booker's legal fees. In addition, and as referenced immediately below, defendant personally distributed and possessed with intent to distribute heroin and other controlled substances for the Four Corner Hustlers on multiple occasions.

<u>Distribution of heroin on April 11, 2006</u>

As set forth in the plea agreement, as of about April 11, 2006, the Four Corner Hustlers controlled narcotics sales in the area in and around West 5th Avenue and South Karlov Avenue in Chicago. Doc. # 533, PSR § 35. Drug Dealer A was responsible for hand-to-hand narcotics sales nearby in the area of the 700 block of South Kedvale in Chicago. As Drug Dealer A sold narcotics, defendant supplied Drug Dealer A with more narcotics as Drug Dealer A's supply ran low or ran out. Specifically, on April 11, 2006, defendant exited a white minivan and walked over to Drug Dealer A and handed Drug Dealer A a clear plastic bag that contained several smaller bags of suspected narcotics. Drug Dealer A then placed the bag on the ground in the mouth of the south alley off of 5th Avenue just east of Kedvale. Shortly thereafter, an undercover Chicago Police Department (CPD) officer purchased three tinfoil packets

4

containing heroin from Drug Dealer A in exchange for $30. CPD recovered an additional 13 tin foil packets of heroin from the bag that defendant had given to Drug Dealer A. Defendant acknowledged, in the plea agreement, that the narcotics he provided to Drug Dealer A tested positive for approximately 2.2 grams of heroin. Doc. # 533.

Distribution of heroin on February 5, 2013

As set forth in the plea agreement, on or about February 5, 2013, a CPD officer working in an undercover capacity purchased heroin from defendant near North Avenue and Harlem Avenue in Chicago. Doc. # 533, PSR § 36. More specifically, a confidential informant contacted SPANN defendant to purchase narcotics and advised defendant that he/she planned to bring another person – the undercover officer. Defendant advised the confidential informant that defendant preferred to meet in one location to conduct his own surveillance and then, when the confidential informant arrived, defendant would instruct the confidential informant to drive to a new location. Defendant instructed the confidential informant to meet him/her at North Avenue and Harlem Avenue.

The confidential informant and undercover officer went to North Avenue and Harlem Avenue. When they arrived, the confidential informant called defendant, and defendant directed them to another location, and when they arrived there, defendant instructed them to follow his vehicle, which they did. Defendant parked near 40 West Chicago Avenue. Defendant entered the vehicle being driven by the confidential informant and the undercover officer. The undercover officer handed defendant $40

and defendant handed the undercover officer two clear baggies containing heroin. Defendant acknowledged, in the plea agreement, that the substance he sold to the undercover officer on February 5, 2013, tested positive for approximately .4 grams of heroin. Doc. # 533

Distribution of heroin on February 6, 2013

As set forth in the plea agreement, on or about February 6, 2013, a CPD officer working in an undercover capacity purchased heroin from defendant near the 5900 block of West Adams Street in Chicago. Doc. # 533, PSR § 36. More specifically, on February 6, 2013, a CPD officer working in an undercover capacity contacted defendant to arrange the purchase of $60 of heroin. Defendant directed the undercover officer to drive along the Interstate 290 expressway. The undercover officer contacted defendant shortly thereafter and defendant advised the undercover officer that he was exiting the expressway at Austin Avenue and that the undercover officer should follow him. The undercover officer followed defendant's car to the 5900 block of West Adams Street. Defendant entered the undercover officer's car and handed the undercover officer three tinfoil packets of heroin in exchange for $60. Defendant acknowledged, in the plea agreement that the substance he sold to the undercover officer on February 6, 2013, tested positive for approximately 2.4 grams of heroin. Doc. # 533.

### III. SENTENCING GUIDELINES RANGE

The government agrees with the PSR that, pursuant to Guideline § 2E1.1(a)(1), the base offense level for Count One is 19 because it is greater than the offense level applicable to the underlying racketeering activity, which is the distribution of

controlled substances. PSR ¶¶ 43–45. Pursuant to Guideline § 3E1.1(a), the offense level should be decreased by two levels since defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. PSR ¶ 52. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. PSR ¶ 53. Accordingly, as provided by Guideline § 3E1.1(b), an additional one-level reduction in the offense level is appropriate. *Id*. Therefore, the government agrees with the PSR that the anticipated offense level is 16. PSR ¶¶ 54, 135. The government also agrees with the PSR that the criminal history category score equals 15, resulting in a criminal history category of VI. PSR ¶¶ 57–74, 135.[2] With an adjusted total offense level at 16, combined with a criminal history category of VI, the advisory sentencing guidelines range in this case is 46 to 57 months' imprisonment. PSR ¶¶ 43–74, 135.

## IV. ARGUMENT

As a matter of process, the Court must properly calculate the Guidelines range, treat the Guidelines as advisory, consider the factors set forth in 18 U.S.C. § 3553(a) (Section 3553(a)), and adequately explain the chosen sentence, including an explanation for any variance from the Guidelines range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Dean*, 414 F.3d 725 (7th Cir. 2005). The

---

[2] While not addressed in the plea agreement, PSR ¶ 73 correctly notes that defendant committed the offense under a criminal justice sentence in case 12CF745, the retail theft sentence referenced in PSR ¶ 70. Accordingly, pursuant to Guideline §4A1,1(d), two additional criminal history points are added to the criminal history score. PSR ¶ 73.

7

framework for determining an appropriate sentence is set forth in Section 3553(a). *Id*. Section 3553(a) requires that the Court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstance of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence; and (5) the need to avoid unwarranted sentencing disparities. For the reasons stated below, and pursuant to 18 U.S.C. § 3553(a), the government asks the Court to sentence defendant to a sentence within the advisory guidelines range of 46 to 57 months' imprisonment.[3]

### A. Seriousness, Nature and Circumstances of Offense

The nature and circumstances of this offense have been set forth in the speaking superseding and were affirmed in greater detail by defendant in the plea agreement. Defendant, or "12" as he was known on the street and referred to by other members of his gang, was a long-time member of the Four Corner Hustlers street gang during the height of their power. While defendant may attempt to minimize his involvement in this violent enterprise as just a low level drug dealer, the evidence and the seriousness of his conduct over the course of two decades tells otherwise. Specifically, the distribution of controlled substances, such as heroin, leads to predictably dire consequences in the communities in which the drugs are sold and

---

[3] As set forth on page two of the PSR Recommendation, defendant served approximately 23 months' in federal custody between September 20, 2017 and August 16, 2019. As discussed previously in open court and for purposes of adjudicating a sentence here, the government does not object that the Court take into account defendant's previous incarceration as it relates to the prior sentences set forth in § 64 and § 71 of the PSR..

8

ingested. When those sales were combined with the power of the Four Corner Hustlers—a street gang willing and ready to use violence to protect itself and its interests—it made for an often lethal combination and had a chilling effect on the individuals who called those communities home. Defendant did not merely sell drugs, but was in regular communication with the leader of the Four Corner Hustlers, Labar Spann, about the gang's activities, members, and interests. Defendant's conduct, no matter his role, was therefore significant and had a meaningful impact on the enterprise's continued sustainability on the west side of Chicago. Accordingly, the seriousness and nature and circumstances of defendant's crime demonstrate that a Guideline range sentence is warranted.

### B. History and Characteristics of Defendant

According to the PSR, defendant is 42 years old and has resided in Illinois for the majority of his life. PSR ¶¶ 110–111. In the PSR, defendant maintains that he had an unstable and challenging upbringing on many fronts. *Id*. The PSR further reveals that defendant had a limited education, suffered from substance abuse addiction since he was approximately sixteen years-old, and was, for the most part, unemployed for over the last twenty years. PSR ¶¶110–113, 125. The PSR also reflects that defendant is in a long-term relationship and has tried to maintain a good relationship with children while he has been incarcerated on this matter. PSR ¶¶ 112–113. While defendant's challenging upbringing may have played a role in defendant's early struggles, his prior convictions and instant conduct as an active member of the Four Corner Hustlers street gang exhibits an affirmative disregard for the law. PSR ¶¶ 60–71. Such behavior, which includes warrants for non-appearance

9

and robber, theft, and narcotics trafficking convictions in multiple counties demonstrates a pattern of activity that should not be ignored when assessing defendant's history and characteristics for purposes of sentencing. *Id.* Accordingly, a Guideline range sentence is consistent with the history and characteristics of defendant and will provide just punishment.

### C. The Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence to Criminal Conduct

The need to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct, also support a sentence within the advisory guidelines range. Members of the community, who wish to become gang members and sell poison to citizens and protect that illicit business and illicit enterprise with loaded guns like the Former Corner Hustlers, must know there will be consequences for such behavior. The scourge of drugs and guns go hand-in-hand, especially with the Four Corner Hustlers, and defendant knowingly engaged in making his neighborhood worse by supporting and enabling the enterprise to thrive through his conduct described above. Accordingly, a within Guidelines sentence here will help serve to deter defendant from committing further such offenses and also send a message to other potential offenders in this District that the conduct described above will not be tolerated. A within Guidelines sentence of imprisonment would therefore recognize the seriousness of the offense, promote respect for the law, provide just punishment (based upon the conduct and defendant's history discussed above) and protect the public from the danger the defendant

presents. Such a sentence is sufficient, but not greater than necessary, to comply with the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## V. SUPERVISED RELEASE

Given defendant's criminal history, and consistent with the Seventh Circuit's guidance in *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), the United States recommends that following a period of incarceration, defendant be sentenced a term of supervised release of three years with certain conditions imposed to ease defendant's transition back into the community. The government sets forth below the justifications for the proposed conditions of defendant's supervised release. PSR ¶¶ 138–139. During that period, the government recommends that the Court consider imposing the following conditions of supervised release, as set forth in the PSR:

### D. Proposed Mandatory Conditions of Supervised Release

The following conditions are required by law:

- The defendant shall not commit another federal, state or local offense. *See* 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(a)(1).
- The defendant shall not unlawfully possess a controlled substance. *See* 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(a)(2).

- The defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law pursuant to Title 42, United States Code, Section 14135a(a). *See* 8 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(a)(8).

- The defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on probation and at least two periodic drug tests thereafter for use of a controlled substance. *See* 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(a)(4).

**E.     Proposed Discretionary Conditions of Supervised Release**

The following conditions are intended to facilitate the probation officer's supervision of the defendant, which is important to promote the defendant's respect for the law and to deter the defendant from committing future crimes:

- The defendant shall provide financial support to any dependents if financially able. U.S.S.G. § 5D1.3(d)(1).

- The defendant shall seek, and work conscientiously at, a lawful employment or, if you are not gainfully employed, you shall pursue conscientiously a course of study or vocational training that will equip you for employment. *See* U.S.S.G. § 5D1.3(c)(7).

- The defendant shall refrain from knowingly meeting or communicating with any person whom the defendant knows to be engaged in criminal activity, specifically Labar Spann, Sammie Booker, Tremayne Thompson, Juhwon Foster, Marchello Devine, Keith, Chatman, Stevon Sims, and Rontrell Turnipseed. U.S.S.G. § 5D1.3(c)(8).

- The defendant shall refrain from any use of alcohol and from any use of a narcotic drug or controlled substance, as defined in **§ 102** of the Controlled Substances Act (**21 U.S.C. § 802**), without a prescription by a licensed medical practitioner.

- The defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon. U.S.S.G. § 5D1.3(c)(10).
- The defendant shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.

- The defendant shall not knowingly leave the judicial district in which he is being supervised without the permission of the court or the probation officer. U.S.S.G. § 5D1.3(c)(3). The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

- The defendant shall report to the probation off in the federal district to which you are released within 72 hours of your release from

    imprisonment. The defendant shall report to the probation officer as directed by the probation officer. U.S.S.G. § 5D1.3(c)(1) and (2).

- The defendant shall permit the probation officer to visit his home, at work, at school, at a community service location, or elsewhere at any reasonable time, and permit confiscation of any contraband observed in plain view of the probation officer and you shall permit confiscation of any contraband observed in plain view of the probation officer. U.S.S.G. § 5D1.3(c)(6).

- The defendant shall notify the probation officer within 72 hours of any change in his residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquires by the probation officer. The defendant shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege. U.S.S.G. § 5D1.3(c)(5).

- The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer. U.S.S.G. § 5D1.3(c)(9).

- The defendant shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

F.    **Proposed Special Conditions of Supervised Release**

- The defendant shall participate in an approved job skill-training program at the direction of the U.S. Probation Office within the first 60 days of placement on supervision.

- If unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, defendant shall perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed. The amount of community service shall not exceed 400 hours. U.S.S.G. § 5D1.3(e)(3).

13

- The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court. U.S.S.G. § 5D1.3(c)(11).

- The defendant shall observe one Reentry Court session, as instructed by your probation officer.

These supervised release terms are narrowly tailored to facilitate supervision by the probation officer, deter the defendant from future crimes, support defendant's rehabilitation and reintegration into the community, and ensure that he is engaged in lawful pursuits rather than criminal activity.

## VI. CONCLUSION

In light of the foregoing, the government respectfully requests that this Court impose a sentence of imprisonment within the advisory guidelines range of 46 to 57 months, and a term of supervised release of three years.

                                            Respectfully submitted,

                                            JOHN R. LAUSCH, JR.
                                            United States Attorney

By: *s/ William Dunne*
     WILLIAM DUNNE
     PETER S. SALIB
     TIMOTHY J. STORINO
     Assistant United States Attorneys
     219 S. Dearborn Street, 5th Floor
     Chicago, Illinois 60604
     (312) 353-5300

Dated: January 5, 2019