UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 17 CR 611-1 |
| LABAR SPANN | Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Labar Spann and others are charged in a nine-count racketeering indictment. Count III charges Spann with the murder of Rudy Rangel in violation of 18 U.S.C. § 1959, and Paragraph 7(q)(vi) of Count I lists the murder as one of the predicate offenses of the racketeering conspiracy. Spann moves to dismiss Count III and Paragraph 7(q)(vi) from the indictment on the grounds that prosecuting him for the murder of Rangel would violate the Double Jeopardy Clause of the U.S. Constitution. He similarly moves for related discovery pursuant to Federal Rule of Criminal Procedure 16. For the following reasons, Spann's motions are denied without prejudice.

**Background**

The allegations giving rise to Spann's motions are primarily based on three events: (1) the federal indictment of Mario Young and his subsequent cooperation with authorities; (2) the state court prosecution of Spann for the murder of Rudy Rangel, and (3) the dismissal of Spann's federal drug trafficking indictment. The Court summarizes each event in turn.

1

### 1. The Federal Indictment of Mario Young and Subsequent Cooperation

In 1999, Mario Young was convicted in Cook County Circuit Court for delivering cocaine, a felony under Illinois law. While Young was on parole, federal law enforcement officials asked him if he had recently come into possession of a gun. Young admitted that he had, and he was subsequently indicted in April 2003 for being a felon in possession of a firearm. Young was initially held in federal custody but was later released on bond. Following his release, and at the direction of state and federal law enforcement authorities, Young secretly recorded several conversations with Spann and others. The recordings implicated Spann in state and federal crimes, including Rangel's murder. *See* R. 869 at 2-3; R. 870 at 6.

### 2. Arrest and Prosecution of Spann for the Murder of Rudy Rangel

Following the recordings, Spann was arrested by Chicago Police officers and transported to the department's Homan Square facility in late 2003. Spann claims that he was arrested pursuant to a federal warrant and that he declined to provide officers with information regarding Rangel's murder. R. 809 at 9. The police reports from his arrest, however, do not seem to mention a federal warrant and they specifically detail a series of statements Spann made to detectives and state prosecutors related to the Rangel investigation. *See* R. 870 at 7-8. In any event, following these conversations, Spann was charged by the Cook County State's Attorney's Office with first-degree murder and armed robbery. *See Id.* at 8; R. 869-1. In 2008, he was found not guilty on the murder charge but remained in state custody

on a separate armed robbery charge.[1] *See* R. 869. After pleading guilty to that charge and others, he was eventually released from prison in 2009. *Id.*

### 3. Federal Drug Trafficking Indictment and Subsequent Dismissal

A week after Spann was taken into state custody for Rangel's murder, the federal government indicted Spann for drug trafficking, and a bench warrant was issued for his arrest. *See United States v. Spann*, 03 CR 1108, Dkt. 3 (N.D. Ill. Nov. 20, 2003). A few months later, in March 2004, the Executive Committee for the Northern District of Illinois reassigned the matter to the committee's fugitive calendar.[2] *Id.* at Dkt. 4. No meaningful activity occurred in the case for the next seven years, when in 2011, the government moved to dismiss the indictment and the bench warrant for Spann's arrest was returned unexecuted. *Id.* at Dkts. 5, 11.

\* \* \*

Piecing these events together, Spann argues that state and federal investigators and prosecutors worked "hand-in-glove with each other" on the Rangel murder investigation and the circumstances surrounding it. He claims that the state

---

[1] To clarify a confusing point in the record, Spann was charged with conspiracy to commit armed robbery and attempted armed robbery in the Rangel case, and was separately charged with armed robbery in a different case. *Compare* R. 869-1 (listing conspiracy to commit armed robbery and attempted armed robbery as part of the charges filed in the Rangel case), *with* R. 869 at 4 (noting that Spann remained in state custody after the Rangel trial on an armed robbery charge in Case No. 03-CR-2651902). Spann was found not guilty of the armed robbery charges in the Rangel case, but pled guilty to the armed robbery charge in Case No. 03-CR-2651902.

[2] As explained in the Northern District of Illinois's Internal Operating Procedures, a case is moved to the committee's fugitive calendar whenever "a defendant in a criminal case is fugitive for more than 30 consecutive days or whenever short of said 30 days the judge determines that a defendant is fugitive." IOP 13(b)(1).

3

murder charge was a "joint decision" by the Cook County State's Attorney's Office and U.S. Attorney's Office, and contends that both offices worked so closely together that they essentially operated as a "single prosecutor." Because the state murder prosecution was carried out by the state *and* federal governments, Spann argues, the Double Jeopardy Clause prohibits the federal government from prosecuting him for Rangel's murder in this case. At a minimum, Spann asks for discovery into the working relationship between the two prosecuting authorities as well as an evidentiary hearing.

**Analysis**

The Double Jeopardy Clause of the Fifth Amendment provides that no person may be "twice put in jeopardy" "for the same offence." U.S. Const. amend. V. This prohibition is not absolute, however. The clause does not prohibit, for example, successive prosecutions by separate sovereigns arising out of the same acts:

> "Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both."

*Bartkus v. Illinois*, 359 U.S. 121, 131 (1959); *see also Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019). Illinois and the United States are separate sovereigns, so the Double Jeopardy Clause does not prevent the federal government from prosecuting Spann for Rangel's murder even though he was previously acquitted in state court.

Faced with this problem, Spann invokes the "sham prosecution" exception to the Double Jeopardy Clause established in *Bartkus*. There, the Supreme Court noted

4

in dicta that the Double Jeopardy Clause might prohibit consecutive state and federal prosecutions when the second prosecution is "a sham and a cover" for the first. *Bartkus*, 359 U.S. at 123-24. Because the exception comes from dicta, and because the exception did not apply to the specific facts of *Bartkus*, the Seventh Circuit has repeatedly questioned if it even exists. *See United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir. 1993) ("We have questioned whether *Bartkus* truly meant to create such an exception, and we have uniformly rejected such claims."); *United States v. Ballinger*, 465 F. App'x 563, 565 (7th Cir. 2012) (same); *United States v. Baker*, 88 F. App'x 96, 98 (7th Cir. 2004) (same). To the extent the exception does exist, it is "extremely narrow" and requires a defendant to show that the second sovereign, in bringing the successive prosecution, is acting as a "tool" or "puppet" of the first. *United States v. Algee*, 309 F.3d 1011, 1015 (7th Cir. 2002).[3]

Based on the current record before the Court, Spann has not made that showing here. As an initial matter, there is no evidence that the federal prosecutors in this case are acting as "mere puppets" of the Cook County State's Attorney's Office. To the contrary, the record suggests that state and federal law enforcement authorities have engaged in the type of cooperative efforts that are "welcome[d]" and "undeniably legal." *Brocksmith*, 991 F.2d at 1367 (citation omitted); *see also Bartkus*, 359 U.S. at 122-23 (noting that cooperation "is the conventional practice between [state and federal] prosecutors throughout the country"); *United States v. Figueroa-*

---

[3] To illustrate the narrowness of the exception, this Court has not identified a single Seventh Circuit case which found the second prosecution to be a "sham and cover" for the first.

5

*Soto*, 938 F.2d 1015, 1020 (9th Cir. 1991) (holding that "sham prosecution" exception does not forbid "very close coordination in the prosecutions, in the employment of agents of one sovereign to help the other sovereign in its prosecution, and in the timing" of court proceedings).

Recall that Mario Young was charged by the federal government as being a felon in possession. Facing a federal sentence, Young agreed to cooperate with state and federal law enforcement officials by recording his conversations with Spann and others. Those recordings resulted in evidence of Spann's narcotics trafficking, as well as Spann's involvement in Rangel's murder. Spann was thereafter arrested by Chicago police officers and charged with armed robbery and first-degree murder. After being acquitted of the latter charge in 2008, Spann was eventually released from state custody and his federal drug charge was later dismissed. Although Spann relies on these events in support of his motion, they neither demonstrate nor suggest that state prosecutors are using the federal government as a "tool" to take a second bite at the proverbial apple. *See Bartkus*, 359 U.S. at 123-24; *see also United States v. Jordan*, 870 F.2d 1310, 1313 (7th Cir. 1989) (holding that "sham prosecution" exception did not apply "without evidence that the federal prosecution was a tool or sham for double prosecution by state officials"); *United States v. Superson*, 1996 WL 264710, at *1 (N.D. Ill. May 16, 1996) (finding no "sham prosecution" because there was "no suggestion that the state has made any decisions with respect to [the federal] prosecution").

Spann contends that this case still fits within the "extremely narrow" scope of the "sham prosecution" exception because state and federal prosecutors acted as a "unitary sovereign" during the state murder proceedings. To this point, and as briefly mentioned earlier, Spann claims that the state murder charge was a "joint prosecutive decision," that state and federal prosecutors coordinated "which office would prosecute [him] for which offenses," and that the evidence presented at the state trial is identical to the evidence that will be presented at the federal trial. In this regard, Spann's argument is a twist on *Bartkus* in which his primary concern is not that state prosecutors are exerting too much influence over the successive federal proceedings, but that federal prosecutors exerted too much influence over the previous state proceedings. Spann's argument is not convincing.

First, neither the Supreme Court nor the Seventh Circuit has embraced this inverse *Bartkus* theory. Second, even assuming such a theory was viable, there is no evidence in the record suggesting that the state murder charge was a "joint prosecutive decision." The police reports from Spann's arrest explicitly mention that Assistant State's Attorney Jeff Levine "approved" the first-degree murder charge after speaking with Spann about the Rangel incident. *See* R. 870 at 8. The reports do not mention federal prosecutors, and Spann has not pointed to any document referencing federal involvement in the state's decision to charge him with murder. Third, even if state and federal prosecutors cooperated with each other in deciding what to charge and when, there is little reason to think (based on the current record) that doing so was improper. Spann asks the Court to read into the "interplay" of state

7

and federal charges in this case—*i.e.* the fact that he was indicted for a federal drug crime the same week he faced state murder charges, only to have the federal indictment inexplicably dismissed years later. But there is a line between cooperation and collusion, and the record does not suggest that federal prosecutors crossed it. *See United States v. Angleton*, 314 F.3d 767, 773 (5th Cir. 2002) (recognizing that "[c]ollusion between federal and state officials might blur their distinction such that the defendant is effectively prosecuted twice by the same sovereign," but concluding that "we have never found sufficient collusion to justify [the *Bartkus* exception]."); *United States v. Lucas*, 841 F.3d 796 (9th Cir. 2016) ("Cooperation is constitutional; collusion is not."). Finally, regarding the trial evidence, *Bartkus* makes clear that the sharing of evidence from one sovereign to the other, as is the case here, does not create a double jeopardy problem. *See Bartkus*, 359 U.S. at 122; *accord Jordan*, 870 F.2d at 1313 ("It would have been difficult for the federal prosecutor to prove the federal offense without some overlap in evidence."). Plus, federal prosecutors have represented to the Court that discovery produced to Spann in this case identifies additional witnesses and testimony that were not presented at Spann's state murder trial. *See* R. 869 at 9-10. Spann has not argued otherwise.

The closest Spann comes to making the required showing under *Bartkus* is through plea negotiation documents from 2006 that are attached to his reply brief. The first document is a photocopy of handwritten notes in which Spann's defense attorney at the time, Tod Urban, allegedly wrote that he "need[ed] to speak w[ith] AUSA Chang re federal charges." R. 897-1. The second document is a letter addressed

8

to Urban from a Cook County State's Attorney in the Narcotics Prosecution Bureau, which states in relevant part:

> The offer extended to defendant Spann will be revoked on 19 September 2006. If defendant Spann accepts the offer, you must advise me in advance of the 19 September 2006 court date such that I would indicate defendant Spann's acceptance to the US Attorneys Office. Understand that the proposed offer includes defendant Spann swearing to the facts of the case.

*Id.* Spann claims that the offer referenced in the letter was a "global" plea deal involving all criminal charges pending at the time, and was previously discussed in state court on August 2, 2006. He further claims that the letter and handwritten note demonstrate how the federal government had a role in resolving the state murder charge.

Spann is correct that the documents show some interaction between his attorney, state prosecutors, and the U.S. Attorney's Office. He is also correct that a "global" offer to resolve all criminal charges would necessarily mean that the federal government had some role in a potential plea deal. Even so, the "sham prosecution" exception still does not apply in this case. As an initial matter, the handwritten note states that Spann's attorney needed to speak with the federal prosecutor about federal charges, not *state* charges. Since the federal drug indictment against Spann was pending in 2006, it is not surprising that Spann's attorney needed to communicate with a federal prosecutor during the same time frame. Furthermore, even if a global plea deal was on the table, neither the note nor the letter suggest that state prosecutors impermissibly ceded their prosecutorial discretion to the federal government in pursuing the deal. *See Angleton*, 314 F.3d at 774 (stating that the key

9

question under *Bartkus* is "whether the separate sovereigns have made independent decisions to prosecute"); *see also United States v. Raymer*, 941 F.2d 1031, 1037 (10th Cir. 1991) (holding that *Bartkus* exception requires defendant to prove that one sovereign "is so dominated by the actions of the other that the former is not acting of its own volition"). At most, the letter shows that the state prosecutor would inform the U.S. Attorney's Office if Spann accepted the deal. That is not evidence of collusion, nor does it indicate that federal prosecutors exercised unilateral control over their state counterparts. It is routine and logical that a criminal defendant facing state and federal charges would wish to resolve them simultaneously.[4] Moreover, several courts have concluded that one sovereign's involvement in another sovereign's plea deal does not bar successive prosecutions under the Double Jeopardy Clause absent extraordinary circumstances not present here. *See, e.g., United States v. Zone*, 403 F.3d 1101, 1104 (9th Cir. 2005) ("[T]he Double Jeopardy Clause does not prevent federal prosecutors from encouraging their state counterparts to pursue plea bargains."); *United States v. Mardis*, 600 F.3d 693, 698 (6th Cir. 2010) (permitting successive prosecution even though federal prosecutors were involved in state plea negotiations); *United States v. Perry*, 79 F. Supp. 3d 524, 531 (D. N.J. 2015) ("Nor does the prospect of a global plea deal compel the conclusion that federal prosecutors

---

[4] Criminal defendants often simultaneously attempt to resolve charges from different sovereignties or even different jurisdictions within the same sovereign. An experienced defense attorney can often negotiate better plea terms in those situations, as prosecutors often reduce the negotiated penalty if they are assured that a more severe penalty will be imposed in the other case. From a defendant's perspective, resolving all criminal charges at the same time is often a desired result so he can move on with his life.

or law enforcement exerted undue control or influence over the state prosecution."); *United States v. Norwood*, 2013 WL 5965330, at *5 (E.D. Mich. Nov. 8, 2013) ("[A]n agreement between the sovereigns regarding the timing of a prosecution or a possible plea deal is not grounds for dismissal unless there is evidence that one sovereign controlled the prosecution of the other."). This Court concludes the same.

Spann advances one final argument but it fails as well. According to Spann, the federal government has no substantial interest in prosecuting him for Rangel's murder. He points to the U.S. Department of Justice *Petite* Policy, which generally precludes a successive federal prosecution after a state prosecution based on the same conduct unless (1) the case involves a substantial federal interest; (2) the prior prosecution left that substantial federal interest "unvindicated"; and (3) the subsequent prosecution has been approved by an Assistant Attorney General. *See* U.S. Attorneys' Manual, § 9–2.031 Dual and Successive Prosecution Policy ("*Petite* Policy"). Spann questions whether an Assistant Attorney General approved the prosecution in this case, and seeks discovery showing the same. The problem for Spann is that the *Petite* Policy, as an internal DOJ guideline, "does not create a substantive right" that a defendant can enforce, nor is it "subject to judicial review." *See United States v. Mitchell*, 778 F.2d 1271, 1276-77 (7th Cir. 1985) (collecting cases). The district court case that Spann cites in support of his motion recognized as much. *See* R. 807 at 13 (citing *United States v. Mardis*, No. 2:08-cr-20021, 2009 U.S. Dist. LEXIS 131137, at *15 (W.D. Tenn. June 24, 2009)). And, as explained above, the Supreme Court has repeatedly recognized that two sovereigns can each have an interest in punishing the same act. *See, e.g.*, *Gamble*, 139 S. Ct. at 1966. In this case, the federal

government, by way of its racketeering laws, has a clear interest in punishing the act that led to Rangel's death, even if Spann personally believes that interest is not substantial. *Cf. Lucas*, 841 F.3d at 806 (rejecting similar argument and noting that while "[defendant] may quarrel with the strength of the federal interest asserted in this case, our review does not extend to revisiting the wisdom of the internal prosecutorial decisions made by the Department of Justice"). Spann's motion to dismiss is accordingly denied.

Spann's motion for discovery under Federal Rule of Criminal Procedure 16 is likewise denied.[5] By way of background, the Court previously ordered the government to submit for an *ex parte, in camera* inspection any and all communications between the U.S. Attorney's Office and the Cook County State's Attorney's Office from 2003 through the present regarding the prosecution of Spann for the murder of Rangel. *See* R. 936 (dated March 22, 2021). The order was issued out of an abundance of caution to ensure that any potential document supporting Spann's motion was reviewed. The government recently informed the Court that it did not need to submit anything for an *ex parte, in camera*

---

[5] Spann's motion seeks eleven different categories of documents. All eleven are not provided here, but the list focuses on communications between state and federal prosecutors regarding the Rangel murder and includes: "any and all communications between the two prosecution entities respecting the investigation, prosecution, and sharing of evidence of Labar Spann for the murder of Rudy Rangel from 2002 until the present"; "any and all documents of any kind evidencing reports of interviews of Mario Young in 2003 at his parole office conducted by state and federal agents of the DEA and ATF"; "any and all documents of any kind evidencing communications between the federal and state prosecutors regarding the decision not to pursue a murder prosecution of Labar Spann for the murder of Rudy Rangel but to defer the prosecution to the state authorities instead"; and "any and all documents of any kind evidencing any application made and the justification provided for seeking a *Petite* policy waiver to prosecute Labar Spann federally for Rudy Rangel's murder following his acquittal on the same charges in state court." R. 808 at 3-4.

12

review, and that it sent "all communications" directly to defense counsel on April 26, 2021.[6] Spann has not filed a renewed motion for discovery since receiving the communications on April 26, so the analysis below is based on the requests and arguments made to date.

Subject to the exemptions described in Rule 16(a)(2), Rule 16(a)(1)(E) requires that, upon a defendant's request, the government must "disclose any documents or other objects within its possession, custody or control" that are "material to preparing the defense." *United States v. Thompson*, 944 F.2d 1331, 1341 (7th Cir. 1991) (quoting Fed. R. Crim. P. 16(a)(1)(E)). The parties argue over the "materiality" standard—the government claims that Spann must make "at least a *prima facie* showing that the requested [discovery] items are material to his defense," *see* R. 859 at 4 (quoting *Thompson*, 944 F.2d at 1341), while Spann contends that he only needs to show a "colorable basis of the underlying claim," *see* R. 808 at 3 (citing *United States v. Armstrong*, 517 U.S. 456, 469 (1996)). That dispute need not be resolved for purposes of this motion because neither standard has been met.[7] Indeed, no evidence in the

---

[6] In addition to producing these communications, the government noted in its opposition brief to Spann's discovery motion that other Rule 16 materials related to the Rangel murder and Mario Young investigation have either been previously produced or will be produced. *See* R. 859 at 3.

[7] The last sentence of Spann's motion for discovery mentions in passing that the requested documents are "also *Brady* material because they would result in the dismissal of the charges based on [a] constitutional violation." R. 808 at 3-4. The familiar principle set forth by *Brady v. Maryland*, 373 U.S. 83 (1963) is that "the government has the affirmative duty to disclose evidence favorable to a defendant and material either to guilt or punishment." *United States v. Fallon*, 348 F.3d 248, 251 (7th Cir. 2003). It is not clear from Spann's motion whether he is asking the Court to require the government to turn over the requested documents under *Brady*, especially since the government shared "all communications" on

record suggests that the federal prosecutors in this case are acting as "puppets" or "tools" of the Cook County State's Attorney's Office. Nor is there any evidence that a "unitary sovereign" prosecuted Spann during his state court proceedings. What the record shows at this point is that state and federal authorities appear to have coordinated their investigative and prosecutorial efforts when they investigated, arrested, and prosecuted Spann in 2003-2004, and that both sets of prosecutors may have engaged in global plea discussions in 2006. But as explained above, that conduct in and of itself does not fall within the "extremely narrow" *Butkus* exception. Spann has accordingly failed to put forth any evidence tending to show the existence of a double jeopardy claim, so his motion for discovery and an evidentiary hearing is denied. *See Lucas*, 841 F.3d at 807 (affirming decision not to grant Rule 16 discovery in "sham prosecution" case where defendant failed to meet threshold requirement for "materiality").

**Conclusion**

For the reasons stated above, the Court denies without prejudice Spann's motion to dismiss, R. 807, as well as his motion for discovery under Rule 16, R. 808. Spann may move for leave to re-file his motions if he identifies new communications or information that cures the deficiencies described in this opinion. The renewed

---

April 26, 2021. To the extent Spann is making such a request, it is denied without prejudice because a single sentence about *Brady* in a motion otherwise focused on Rule 16 is not a developed legal argument. *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory and undeveloped arguments that are unsupported by pertinent authority, are waived.").

motion(s) must explain how the new communications or information cures the issues described herein.

                                                ENTERED:

                                                _____
                                                Honorable Thomas M. Durkin
                                                United States District Judge

Dated: May 24, 2021