UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **No.   17 CR 611 - 1** |
| LABAR SPANN, | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LABAR SPANN'S RULE 29 MOTION
FOR JUDGMENT OF ACQUITTAL
<u>ON COUNT ONE (RICO CONSPIRACY)</u>**

Now comes Defendant, LABAR SPANN, by and through his attorneys,
STEVEN SHOBAT and MATTHEW J. McQUAID, and hereby moves this Honorable
Court, pursuant to Federal Rule of Criminal Procedure 29 for the entry of an order
granting a judgment of acquittal on Count One of the superseding indictment.  In
support thereof, Defendant Labar Spann states as follows:

**I. <u>INTRODUCTION</u>**

1.  The Defendant was found guilty at trial of conspiring to engage in the
affairs of an enterprise (the Four Corner Hustlers) through a pattern of racketeering
in violation of 18 U.S.C. §1962(d) (Count One).  In addition, he was found to have
committed four different murders as part of that RICO conspiracy exposing him to

a potential life sentence on Count One. As set forth in our motion for a new trial, Defendant's conviction for this offense was obtained as a result of errors committed by this Court which prejudiced the Defendant. Even so, the evidence presented to the jury was insufficient to establish the necessary elements of the charged offense beyond a reasonable doubt; likewise, the evidence was insufficient to support the jury's special findings respecting the four predicate murder offenses. Therefore, this Court should enter a judgment of acquittal on Count One and/or at the very least set aside the special jury findings respecting the murders.

## II. <u>MOTION FOR JUDGMENT OF ACQUITTAL</u>

2. Pursuant to Federal Rule of Criminal Procedure 29, the Defendant moves this Court to enter a judgment of acquittal on Count One. Under Rule 29, the Defendant is entitled to a judgment of acquittal on this count because the government failed to present sufficient evidence from which a rational trier of fact could find beyond a reasonable doubt that the Defendant knowingly conspired with others to commit a racketeering offense.

3. Sufficiency of the evidence challenges require the Court to determine if the evidence, viewed in the light most favorable to the government, could support the conviction. *United States v. Garcia*, 919 F.3d 489, 502-04 (7th Cir. 2019)(granting

judgment of acquittal in narcotics case because government's evidence filled evidentiary "gaps with inferences of guilt by association or evidence of an individual's mere presence somewhere criminal activity may have occurred."); *United States v. Musgraves*, 831 F.3d 454, 462 (7th Cir. 2016)(setting aside conspiracy and firearms convictions for insufficient evidence); *United States v. Weimert,* 819 F.3d 351, 354 (7th Cir. 2016)(while "we have sometimes said that [insufficiency challenges raise] a nearly insurmountable hurdle . . . the hurdle is not actually insurmountable though.")(reversing mail fraud conviction and citing cases reversing on insufficiency grounds); *United States v. Lee*, 558 F.3d 638, 644-46 (7th Cir. 2009)(setting aside money laundering convictions based on failure of government to prove essential element of criminally derived proceeds of criminal activity); *United States v. Thornton*, 539 F.3d 741, 749-51 (7th Cir. 2008)(setting aside attempted bank robbery conviction based on failure of government to prove essential element of actual intimidation); *United States v. Pearson,* 113 F.2d 758, 761 (7th Cir. 1997). This same standard applies to a defendant's request for a judgment of acquittal:

> A motion for acquittal may not be granted if, viewing the evidence in the light most favorable to the prosecution, there is relevant evidence from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *United States v. Roman,* 728 F.2d 846, 857 (7th Cir.

> 1984). When applying this standard, a judge must, of course, keep in mind that it is the [finder of fact] which has the exclusive authority to assess the witnesses' credibility, resolve evidentiary conflicts and draw reasonable inferences from the evidence presented. *Id.*

*Pearson,* 113 F.3d at 761.

4.   This long-line of acquittals demonstrates that a guilty verdict can be sustained *only* if the government introduces sufficient *credible and probative* evidence that the defendant was guilty of each element of the offense on each of the charges beyond a reasonable doubt.  *Neder v. United States,* 527 U.S. 1, 15 (1999); *In re Winship*, 397 U.S. 358, 364 (1970).  Failure to prove an essential element entitles a defendant to an acquittal.  *Jones v. United States,* 526 U.S. 227 (1999).  Giving the government the benefit of the reliable witness testimony, and all the inferences which reasonably can be drawn from that evidence, it has failed to demonstrate that a conspiratorial agreement existed between the Defendant and others and that the Defendant was a member of that agreement.

5.   To convict a defendant of a RICO conspiracy in violation of 18 U.S.C. § 1962(d), the government must prove beyond a reasonable doubt that two or more people agreed to conduct or participate in the affairs of an enterprise and agreed to the commission of at least two predicate acts.  *United States v. Volpendesto*, 746 F.3d

273, 284 (7th Cir. 2014). To show such an agreement, the government must prove that a defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it." *Id*. Of course, an essential element of the offense is that the enterprise itself exists, and that the enterprise's activities constitute a pattern of racketeering. *United States v. Benabe*, 654 F.3d 753, 776 (7th Cir. 2011). In this case, the government's evidence failed to establish the existence of a RICO enterprise, it failed to establish that the criminal acts allegedly constituting the pattern of racketeering were related and connected as is required and failed to establish any agreement that certain offenses would be conducted *through* the enterprise. Finally, the government failed to establish, beyond a reasonable doubt, the special murder findings in support of Count One: to wit, the murders of Maximillian McDaniel, George King, Willie Woods, and Rudy Rangel. As such, this Court should grant a Rule 29 motion and enter an order granting a judgment of acquittal. In the alternative, this Court should find that even if the RICO conspiracy evidence was sufficient, none of the special findings are supported by sufficient evidence in the case.

*The Government Failed to Prove That The Four Corner Hustlers Was the Relevant Enterprise.*

6. A racketeering enterprise can be a group of individuals associated in fact provided that they are "associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 944 (2009). As such, an enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. It is also clear that the enterprise "is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The evidence in this case falls woefully short of establishing such a RICO enterprise.

7. The government's evidence in this case simply failed to demonstrate any discernible RICO enterprise separate and apart from the pattern of racketeering in which it allegedly engaged. Clearly the charged alleged enterprise, the Four Corner Hustlers, a street gang, had nothing to do with the crimes carried out in this alleged conspiracy – and attempts at establishing a hierarchy among the alleged participants in this case failed to establish that there was a common enterprise that individuals associated with. While not strictly required, there was no evidence of any role differentiation, no chain of command, no unique *modus operandi*, no membership rules, regulations, dues, meetings, internal discipline, no induction ceremonies or

-6-

regular rituals. Evidence of such activities nonetheless would show a common purpose, would show at least an informal structure, and would show the ongoing nature of the enterprise; these things *are* required to establish an enterprise. Their absence is as strong an indication as there can be that the proof of the enterprise here failed.

8. Not only did the government's evidence fail at establishing an ongoing, enduring enterprise, its own witnesses demonstrated that the charged enterprise had no relation to the criminal acts carried out and charged. Witness after witness testified that the drug activities in which they took part, and which were supposed to be the life blood of the enterprise, were individual drug operations carried out without direction or involvement in any gang affiliation. Each *government* witness testified that they had their own drug suppliers, had their own drug workers, packaged and sold drugs in their own spot, did not share their profits with each other and did not participate in any common drug gang, or gang territory in carrying out their drug activities. These witnesses included Ronnie Allen, Marvin Allen, Hugh McGowan, Mike Miller, and others, who claimed to be individuals associating with and participating in offenses on the west side. Crimes of violence which were carried out, were done without regard to any gang requirements and

without Four Corner Hustler sanction or direction. Persons who belonged to different gangs sold in the same areas, did not pay homage to or fealty to their own gangs, and had coworkers and participants of differing gangs within the close-knit group.

9. In addition to this non-enterprise evidence, the evidence revealed several key aspects which demonstrated that over the life of the alleged RICO conspiracy, the group of people involved, and especially Labar Spann, morphed into something completely different from the idea and reality of a Four Corner Hustler enterprise. These attributes critically included the following: 1) the original idea of the 4CH enterprise completely disintegrated into a group of literally tens upon tens of factions who operated out of different areas, streets, and blocks on the near West Side of the Chicago. Their disintegration was so complete that these groups had multiple generations of members, had long-established "factions" and paid no homage to the group that was once the Four Corner Hustlers. These factions included, of course, the Outlaws, of which Defendant was a part, the Syndicate, rivals of the other factions, and a host of others ("The Gordy 4s," "the Brickyard Fours," etc.); 2) deeply riven through the alleged enterprise was a familial civil war, with one side being Labar Spann and the other being the Goodman family

(associating with the "Syndicate."). This war was so hostile and complete that Samuel Goodman had asked Sammie Booker to assist in the murder of Labar Spann in 2012, and persons related by blood were disavowed by members of the two groups simply for having associated with the other group ("Fly" Mike Miller disowned by family) (individual Spann brothers and cousins on differing sides of the conflict); and 3) Labar Spann had formed his own revolutionary group, the "Outlaws" who were simply that: persons who respected no group or faction of the 4CH's and renounced fealty or loyalty to any such leaders. His renunciation of any loyalty to such an enterprise was graphically demonstrated by his obliteration of his 4CH tattoo on his own hand. Simply put, any putative concept of an ongoing enterprise was completely refuted by the evidence presented to the jury. The Four Corner Hustlers were not a RICO enterprise that had structure or longevity, or endurance; for that matter, as witness after witness testified – it was simply a gang name that had no bearing on the events testified to in the case.

*The Government Failed to Prove That Defendant Spann Agreed to Participate in The Affairs of The Enterprise Through a Pattern of Racketeering.*

10. In addition, the government must show an agreement among and between the various participants that the Defendant joined; and not just any

agreement, but one which embraced the objectives and purpose of carrying out activities through a pattern of racketeering. This pattern must have continuity and relationship. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 244 (1999). The disintegration of the 4CH gang aptly demonstrated in this case is best reflected in the fact that the government could not establish that individual crimes alleged and presented bore any connection to any enterprise. Here the government simply proved a series of isolated offenses committed by Labar Spann and an amalgam of other individuals. It failed to show that these offenses were related to one another, had any continuity between and among the alleged coconspirators, or were carried out to further the Four Corner Hustlers.

11. For example, Labar Spann's individual possession of weapons charges, brought out early in the case, and his possession of a firearm at the firing range and associated witness intimidation acts brought out at the end of the case, bore no relation to one another or to a charged conspiracy. Spann committed them with no coconspirators and with no assistance of any coconspirators. They were similar in that regard to his acts of intimidation on Cook County employees and his smuggling of contraband into the Cook County Jail. Again, these were simply "isolated events" which bore no connection or relation to one another or to any charged act. They

were not agreed to by persons charged in Count One, and certainly not agreed to be conducted through the 4CH enterprise. They were not authorized or directed by anyone other than Labar Spann himself and they were not committed through an organization which shared in profits or planning. They were as random as can be. *United States v. Henley*, 766 F.3d 893, 907-08 (8th Cir. 2014)("criminal acts are related if they are shown to 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' [citation omitted]. The acts must have both 'horizontal relatedness' meaning that the acts are related to one another, and 'vertical relatedness' meaning that the predicate acts have a nexus to the enterprise.").

12. Moreover, acts which Spann allegedly committed with others were not vertically or horizontally related to those committed by any alleged coconspirator. Instead, these were randomly pulled together criminal acts committed by persons who did not work with other individuals as part of a common objective of aiding or helping the Four Corner Hustlers. Cooperating witness, Darius Franklin's decision to participate with Labar Spann in an extortion robbery of Spencer Taylor, bore no relation to or commonality with any other offense or any other alleged coconspirator

-11-

committed.  The same is true of cooperating witness Sammie Booker's decision, along with codefendants Tremayne Thompson and Juwhan Foster's decisions to participate in the robbery of Jerome Terrell's barbershop, or Labar Spann's decision to rob the Mercados' tire shop.  The more recent robbery/extortion of Kelvin Freeman, also bore no relationship with any of the earlier extortions or robberies and had completely different members. Each quickly-assembled group participated with members of their own choosing, engaged in sometimes spontaneous decisions to victimize someone, shared profits only among each other and not with others, and paid no fealty to any 4CH objective, direction, member, purpose, or rule.  One could just as easily have included any extortion ever committed by anyone on the West side of Chicago into the alleged conspiracy as the ones that were included and say they were part of a RICO conspiracy.  The same was true of robberies and shootings allegedly committed.

13. The charged murders also bear no relationship to the charged enterprise. As is more detailed below, the murder of Maximillian McDaniel had nothing to do with the Four Corner Hustlers, or any gang activity or territory of the 4CHs.  By the government's own admission, it was purportedly a "hit" directed by Spann in order to silence a witness against his father ("Ice" Spann) in his father's criminal

organization.  Such a murder might have made more sense if it were alleged to be an act of violence designed to further the activities of the Black Souls enterprise (the gang the elder Mr. Spann supposedly ran) but bore no relationship to the activities of the Four Corner Hustlers.    The exact same statement could be made about the murder of Rudy "Kato" Rangel.  According to the testified-to-version of cooperating witness, Martisse Nunnery, in his latest iteration of the reason behind the assassination, Rangel was a paid "hit" by Mexican drug lords which Spann somehow was asked to "put together" even though other witnesses said it was Nunnery's idea all along,  because Rangel had stolen money and drugs from the Mexican cartel.  Again, if charged as an act in furtherance of the Latin King organization (which Rangel was a member of), or enterprise formed by members of a Mexican drug cartel – such an allegation would at least make some RICO sense; it would have been done to carry out such an enterprise's objectives of protecting its property and keeping its members in line, or some other gang/drug organization motive.  It makes no sense as an alleged act furthering the 4CH enterprise which it did not do.  It was simply a hired hit, contracted to by Nunnery, who Spann allegedly assisted.

14.  The George King and Willie Woods murders at least at first glance have

a patina of being carried out to target rival drug dealers who may have been targeting 4CH drug territory or moving in on drug turf. But not so, say the government cooperators. Sammie Booker attributed the murders to attempting to "draw out" another potential target, Mr. Kenneth Johnson, and helping out a drug supplier, who actually was supplying mostly a rival of Spann's, (Cecil Flowers serving family rival Samuel Goodman). Again, these criminal acts are formed almost spontaneously, to carry out an alleged specific objective of Labar Spann, but bear no relation to anything connected to the Four Corner Hustlers. Again, under this government theory, there is simply no murder carried out by Labar Spann – or for that matter – any alleged member of the 4CH's – no matter what its objective or who its target were, that could not have been included in this RICO conspiracy.

15. Most significantly of all, these series of random criminal acts not only do not constitute a pattern of racketeering, they are not acts which were connected to a Four Corner Hustler enterprise – that is, they were not committed as part of a central agreement or a common purpose – that is, they were not the "affairs of the enterprise" even if committed by persons alleged to be associated with the enterprise. Certainly the government offered no evidence of such a connection. Despite its best efforts, witness after cooperating witness testified that the incidents

they were involved in or that they were aware of, were not done to carry out a common plan, were not being carried out in the name of the Four Corner Hustlers and were not planned by the Four Corner Hustler organization following a meeting. Even though the government claimed that the purpose of such criminality was to enrich the enterprise, or to protect territory, the fact remains that the riches (or benefits) from the various violent crimes were not shared among the Four Corner Hustlers organization or distributed in accordance with 4CH rules or 4CH profit sharing among members (for example, the profits or proceeds of the above-mentioned robberies/extortions only went to those persons who participated in them). As such, the government failed to prove an agreement among the participants to participate in the affairs of an enterprise through a pattern of racketeering.

16.   That certain alleged members may have committed multiple offenses identified, is not enough of a connection to establish proof beyond a reasonable doubt that the enterprise endured, or that the pattern of racketeering continued or that the defendants agreed to carry on those events *through* the same enterprise charged in the indictment. As the Supreme Court noted in *Boyle*, agreeing to commit an offense which might be a RICO predicate is not the same as – and not sufficient

to prove – a conspiracy to commit a RICO violation. What is necessary is that the agreement be to commit the predicate offense *through the RICO enterprise by a pattern of racketeering*. "Proof that a defendant conspired to commit a RICO predicate offense – for example, arson, – does not necessarily establish that the defendant participated in the affairs of an arson enterprise through a pattern of arson crimes." *Boyle*, 556 U.S. at 944. Just because certain individuals may have agreed to commit an offense which could qualify as a RICO predicate, it does not mean that they agreed to commit that offense through the Four Corner Hustler enterprise and that they did so as part of an agreement to carry on the affairs of the 4CH enterprise. *United States v. Yannotti*, 541 F.3d 112, 123 (2d Cir. 2008)(defendant who did not participate in predicate acts within a limitations period is responsible such activities only where defendant agreed that he and others would conduct the affairs of the enterprise); *United States v. Thai*, 29 F.3d 785, 817-819 (2d Cir. 1994)(Section 1959(d) conviction overturned based on government's failure to demonstrate that the arson/bombing of a building bore any relation to the charged enterprise).

17. As the *Thai* court noted, the idea that the bombing in that case must have served the gang's purpose because "its purpose was to earn money by committing crimes of violence against" Asian members of the community, "reveals too much:

-16-

if it were valid, any Hobbs Act robbery or robbery conspiracy ordered by the leader of a RICO enterprise would automatically constitute a violation of §1959." *Id*. Thus, the RICO conspiracy conviction must be set aside.

*The Government Failed to Prove the Maximillian McDaniel and George King murders Beyond A Reasonable Doubt*

18.  In addition to the substantive count deficiencies, the government also failed to prove any of the murders identified in the special verdict forms. Two of the murders alleged to be part of the conspiracy (Willie Woods and Rudy Rangel) were substantively charged (in Counts Two and Three) and we address those in separate motions for acquittal and incorporate those arguments as if fully set forth herein. Those special verdict findings must be set aside. The two others, (Maximillian McDaniel and George King), which were not charged substantively, we address here. As we note below, those special findings also must be set aside.

*The Murder of Maximillion McDaniel*

19.  The government failed to prove the Maxmillian McDaniel murder was committed at Labar Spann's direction and thus must be set aside. As a starting point to our discussion of this murder, which is true of all the murders alleged in this indictment, there is no independent evidence supporting the conclusion that Labar

-17-

Spann was involved. In other words, no forensic evidence – firearm, fingerprint, drug test, DNA, ballistics evidence, gun shot residue witness, etc. – links Spann to the murder of Maximillion McDaniel. Moreover, no eyewitness identifications of Spann being in the van in which McDaniel got in before he was allegedly shot, were made. Moreover, no other circumstantial evidence or documentary evidence – no phone records, rental car records, tracking device, cell phone interceptions, etc. – linked Spann to the McDaniel murder. Instead, the *entirety* of the evidence consisted of 1) witness Sammie Booker claiming he murdered McDaniel at Spann's request (direction?) with the purpose being to silence him because he was a witness against Spann's father, "Ice" Spann and 2) the testimony of Ezekial McDaniel that Spann supposedly stopped by at the Cook County Jail and told McDaniel that "we" had murdered his brother and the same would happen to him if he continued to cooperate against Spann's father.

20. There were critical failings in this proffered testimony, however, that demonstrates that these witnesses are not credible, as a matter of law. Ezekial McDaniel first. His explanation that he first learned that his brother was a cooperator against the elder Spann was unequivocal and adamant: after "waiting, and waiting, and waiting" to receive the discovery in his state murder case for

silencing a witness against his leader, "Ice" Spann, he first learned his brother was cooperating when he reviewed his discovery statements provided to him in his case. This "news" was "shocking" and left him bereft and "confused" at the betrayal of his brother.  It was demonstrated to be impossible under the law of physics – and thus, incredible as a matter of law.  Testimony is unreliable and incredible as a matter of law where "it would have been physically impossible for the witness to observe what he described, or it was impossible under the laws of nature for those events to have occurred at all."  *United States v. Hayes*, 236 F.3d 891, 896 (7th Cir. 2001). The documentary evidence of the discovery receipts listing the statement of cooperating witnesses – including Maxmillion McDaniel – demonstrated that the discovery was not provided to Ezekial or to the elder Spann until weeks *after* the date of the murder of McDaniel, thus he could not have learned about his brother's cooperation the way he described.  The discovery receipt shows the information being conveyed to the elder Spann and Ezekial McDaniel on August 7, 2000. (Defense Ex. Spann 2).  Maximillion McDaniel was found dead on July 25, 2000.

21.  In other words, McDaniel had already been murdered two weeks before the parties learned he was a cooperator and thus the entire motive for the killing was disproved – undermining both Ezekial and Booker's testimony regarding the

reason for the killing. While this Court may not substitute its own assessment of the credibility of the witnesses for the jury's, it must discard evidence that is incredible as a matter of law- which both Booker and Ezekial's testimony was. One only need add two additional facts which undermined Ezekial's presentation: 1) that his trial version of the alleged statements made by Spann and the motive for the murder of his brother, were, despite his protestations at trial that he was deeply shocked to learn of his brother's betrayal and the betrayal of his gang leader, the elder Spann, was kept secret by him for over 4 years before he came forward with their alleged involvement and then became a witness himself against the elder Mr. Spann; and 2) even though he was allegedly threatened, he, like everyone else involved in the elder Spann's murder conspiracy to silence a witness, all of them, including Ezekial, came forward and testified against the elder Spann – and none suffered any retaliation before or after their trial testimony.

22. Sammie Booker's testimony suffered from the same fatal flaws with respect to the supposed motive for the killing and the failure to come forward with such information for years and years. But beyond that, Booker also told a version of the offense which was flatly contradicted by earlier grand jury testimony under

oath after careful preparation adding the involvement of Jasper "Pierre" Davidson[1] in the murder of McDaniel and adding as well the presence of Spann's girlfriend to the group of individuals allegedly in the van where McDaniel was picked up. With the motive for killing McDaniel destroyed, there simply made no sense or purpose for Spann to have been involved in McDaniel's murder even if Booker himself killed McDaniel. The evidence showed that "Ice" Spann had the resources to protect himself within his own gang, and the willingness to do so without regard to enlisting his son in the effort. Thus, the murder finding must be set aside.

*The murder of George King*

23. The government failed to establish that Labar Spann directed the murder of George King and thus the jury's special finding must be set aside. If the murder of McDaniel made little sense, then the alleged motive for murdering George King was even more nonsensical. According to Booker's trial testimony, the murder was done for the purpose of "drawing out" or making Spann rival Kenny Johnson come

---

[1] The Court will recall that witness Sammie Booker falsely implicated Jasper Pierre Davidson in the murder of Carlos Caldwell when IDOC records established that Davidson was in custody at the time (this after falsely identifying "Big Spiffy" in the same murder, who, also could not have committed the murder as he too was unavailable to do so, not because he was in custody but he was already himself dead). He testified under oath before the grand jury about the McDaniel murder by reading a carefully prepared statement in which he did *not* identify or include Jasper Davidson in the murder – adding him as a participant only at the trial.

out of hiding. How murdering King would accomplish that objective was never explained by Booker or by the government for that matter. One would have thought it would have driven Johnson into hiding or avoiding Spann, but that was not the explanation. Of course, Booker had explained the King murder to the federal agents debriefing him in a completely different manner: he explained to Special Agent Tyson Colson that Tremayne Thompson, Jasper Davidson, and "Fanny Waddy" went looking to rob T.Y.'s drug people and killed George King. That explanation did not involve Labar Spann. He had also told the Agents that the day before the murder of George King he had seen George along with Kenny Johnson out at King's drug spot; clearly it was not necessary to murder King to "draw out" Kenny Johnson, he was already "out."

24. It cannot be forgotten, that like the McDaniel murder, there was no evidence of any kind that linked Spann to the King murder other than Sammie Booker's say so. No documents, no statements, no eyewitnesses, no corroborating evidence whatsoever. The testimony of an incredible witness alone cannot be the basis to support a finding like this beyond a reasonable doubt. The jury's finding should be set aside.

WHEREFORE, Defendant Labar Spann respectfully requests that this Court

enter an order granting the Defendant's Rule 29 motion on Count One of the superseding indictment.

Respectfully submitted,

*Steven Shobat*
*Matthew J. McQuaid*
Attorneys for Defendant Labar Spann

May 6, 2022

Steven Shobat
Matthew J. McQuaid
53 West Jackson Boulevard
Suite 1464
Chicago, IL 60604
(312) 353-2118
steven.shobat@sbcglobal.net