UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LABAR SPANN | No. 17 CR 611<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

A jury convicted Labar Spann of racketeering conspiracy (Count I), two murders in aid of racketeering (Counts II and III), and extortion (Count IV). The jury also found that two additional murders formed the basis of Spann's racketeering conduct. Spann has filed motions for acquittal on Counts I, II, and III pursuant to Federal Rule of Criminal Procedure 29, and a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. All motions are denied.

**I.    Motions for Judgment of Acquittal**

A defendant may challenge the sufficiency of the evidence to sustain a guilty verdict against him by filing a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. A defendant faces "a nearly insurmountable hurdle" in contending that the jury had insufficient evidence to find him guilty. *See United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015). The court must "afford great deference to jury verdicts, view the evidence in the light most favorable to the jury's verdict, and draw all reasonable inferences in the government's favor." *United States v. Brown,* 973 F.3d 667, 681 (7th Cir. 2020). The jury's verdict may be set aside on

the grounds of insufficient evidence "only if no rational trier of fact could have agreed with the jury." *Id.*

### A. The Enterprise

Spann argues that the government failed to prove the "enterprise" element of the RICO charge for two reasons: (1) the government failed to prove that Spann's conduct with his associates was related to the Four Corner Hustlers gang; and (2) if the Four Corner Hustlers is not the relevant enterprise, Spann and his associates also did not constitute an enterprise. *See* R. 1319 at 5-6.

On the first point, Spann's primary contention is that the evidence showed the "Four Corner Hustlers were not a RICO enterprise that a had a structure or longevity, or endurance," and that "it was simply a [historical] gang name that had no bearing on the events testified to in this case." R. 1319 at 8. Instead, according to Spann, the evidence showed the defendants and witnesses in this case were members of various "factions" at war with each other. *Id.*

Spann is correct that the evidence showed that the Four Corner Hustlers were divided into quarreling factions. But the existence of factions within an enterprise does not mean the enterprise does not exist. *See United States v. Olson*, 450 F.3d 655, 667-68 (7th Cir. 2006) (multiple factions within the gang did not make unreasonable the jury's finding that the larger gang was the relevant enterprise); *Menzies v. Seyfarth Shaw LLP*, 197 F.Supp.3d 1076, 1093 (N.D. Ill. 2016) ("[A] single 'association-in-fact' enterprise can even exist when its members and associates constitute opposing factions."); *United States v. Orena*, 32 F.3d 704, 710 (2d Cir. 1994)

2

(finding that internal divisions did not undermine the existence of a single "association-in-fact" enterprise under RICO).

Furthermore, despite these factions, witness testimony was consistent that Spann and his associates always considered themselves to be Four Corner Hustlers; that their association was based on their membership in the Four Corner Hustlers; and that their crimes were committed in order to enrich themselves and bring notoriety to themselves as Four Corner Hustlers. The government summarizes and reviews this evidence in their brief. *See* R. 1388 at 5-13.

Eighteen separate witnesses testified not only about the existence of the Four Corner Hustlers, but also identified the defendant as a member of the Four Corner Hustlers. Witnesses, such as Hugh McGowan (Tr. at 972), Marvin Allen (Tr. at 1631), Sammie Booker (Tr. at 1704), Shaun Jackson (Tr. at 2632), Anthony Buckner (Tr. at 3722), Ricky Fountain, Mike Miller, and Ronnie Risper, explained that they were, at times, themselves members of the Four Corner Hustlers and identified the defendant as a fellow member. Witnesses who were members of other gangs, such as Ronnie Allen, Ezekiel McDaniel, Darius Franklin, Mario Young, Demetrius Harris, and Antonio Devine, explained that they associated with Four Corner Hustlers and that, again, the defendant was a Four Corner Hustler. Tr. at 931, 1267, 2993. None of these 18 witnesses testified that Spann ever stopped being a Four Corner Hustler, or that they ever heard Spann renounce his membership in the enterprise.

The evidence was sufficient for a jury to find that Spann was the leader of the Four Corner Hustlers enterprise and imposed rules and order on his subordinates.

3

The government presented evidence of Spann explaining to his subordinates the various roles in the enterprise and consequences for not following orders. *Id.* at 9-10. In a recorded conversation with cooperating witness Mike Miller, Spann explained how the enterprise worked and what happened when orders were not followed. *See* Gov. Ex. 532. The evidence showed that Spann's subordinates understood that as the leader of the enterprise, he was entitled to more than half of what they earned from their criminal activity. *Id.* ("where everybody can eat . . . I'ma get eight hundred out'a every five grams, man. Give me five hundred. Y'all take the threes, man. The workers getting paid and everything. Just get on top of my business man."). Spann also arranged for Four Corner Hustlers to have legal representation when they were arrested, frequently the same attorney. *See* Gov. Ex. 506J. Spann monitored the enterprise's business even while he was in prison. *See* Gov. Ex. 505.

Spann's enterprise was also identifiable because it was organized around a limited geographic area and common purposes. Multiple witnesses testified to growing up around Pulaski Avenue, Polk Street, and Lexington Avenue, and explained this was the heart of the Four Corner Hustlers' territory. In a March 2015 Instagram post, Spann posted a video of himself explaining that he was born and raised on the 3900 block of Lexington and cursing anyone not from that block. *See* Gov. Ex. 300L. The evidence showed that Spann's enterprise was organized around control of this geographic area.

Spann and his associates controlled this geographic area through murders, robbery, and extortion. Spann took on contract murders of Willie Woods and Rudy

4

Rangel to further the reputation of the Four Corner Hustlers. They robbed and extorted drug dealers like Ricky Fountain and Ronnie Risper. They knew Fountain and Risper would not report them to the police. The Four Corner Hustlers then resold the drugs on the street. Spann and his associates bragged about their criminal accomplishments. *See*, *e.g.*, Gov. Ex. 301H (co-defendant Turnipseed's statement on social media).

Without objection from Spann, the jury was given the Seventh Circuit pattern instruction regarding the "enterprise" element. *See* R. 1197 at 28; Tr. 6436-37. The jury considered the evidence and, in accordance with this instruction, found the government had proved that the Four Corner Hustlers were the relevant enterprise and that Spann participated in and led that enterprise. If the jury believed that Spann's faction was the relevant enterprise, as opposed to the greater Four Corner Hustler gang, they could have found Spann not guilty for that reason. Spann's counsel made this argument to the jury and the jury rejected it. Drawing all reasonable inferences in the government's favor, the jury's findings that the government had proven the existence of the Four Corner Hustlers enterprise, and that Spann participated in that enterprise, were not unreasonable.

### B. Pattern of Racketeering Activity

Spann argues that the government failed to prove a pattern of racketeering activity because "the government simply proved a series of isolated offenses committed by [Spann] and an amalgam of other individuals." 1319 at 10. According to Spann, the government, "failed to show that these offenses were related to one

another, had any continuity between and among the alleged coconspirators, or were carried out to further the Four Corner Hustlers." *Id.*

This argument ignores the evidence that Spann repeatedly committed murders, robbery, and extortion with the same people over a twenty-year period. Most of these crimes were committed within the community of people who dealt illegal drugs in and around the limited geographic area where Spann and his associates operated. The evidence also showed that Spann and his associates, such as Sammie Booker, Tremayne Thompson, Juwhan Foster, Darius Franklin, Jasper Davidson, and Antonio Devine, all considered themselves Four Corner Hustlers and were associated in that enterprise for the purpose of committing these crimes. All of these individuals (except for Darius Franklin) were Spann's co-defendants before pleading guilty. The same people committing the same crimes under the same circumstances over a long period of time is strong evidence from which the jury could find a pattern of racketeering activity.

Spann argues that "agreeing to commit an offense which might be a RICO predicate is not the same as—and not sufficient to prove—a conspiracy to commit a RICO violation." R. 1319 at 15-16. This is true as far as it goes. But Spann was not charged with committing a single offense. And he was not charged with committing multiple isolated offenses with different people. He was charged with numerous acts of murder, robbery, and extortion, with the same small group of associates, all of whom testified that they were associated with each other because they were Four Corner Hustlers. The jury was not asked to determine whether participation in a

6

single act constituted agreement to participate in a pattern of activity. Instead, the evidence showed that Spann orchestrated a pattern of crimes among a small group of associates over an extended period of time within the same community of illegal drug dealers.

### C. Murder

Spann argues that the government failed to prove his culpability for the murders for which the jury found him guilty in Counts II and III (Willie Woods and Rudy Rangel, respectively), and the murders which the jury found were additional predicates of his racketeering activity (Maximillian McDaniel and George King). But contrary to Spann's argument, the evidence showed that Spann, as the leader, set the enterprise's agenda. Spann's well-being was a primary objective of the enterprise. Murders that eliminated threats to Spann were part of the enterprise's racketeering activity. The jury found that Spann participated in or orchestrated the four murders for these purposes.

#### 1. McDaniel

Spann does not dispute that McDaniel was murdered because he was set to testify against Spann's father. Spann argues that that government failed to prove that he ordered McDaniel's murder.

Two witnesses, however, testified that Spann ordered the murder. The first was McDaniel's brother, Ezekial McDaniel, who testified that Spann visited him in prison and told him that he would also be killed if he cooperated in the case against Spann's father. Ezekial testified that he learned of McDaniel's cooperation when he

7

received discovery in his own case, which he received after McDaniel had been murdered. Spann contends that these facts are contradictory. But there is nothing contradictory about Ezekial learning of McDaniel's cooperation and then subsequently being threatened by Spann. In fact, Spann's threat only makes sense in the context of Ezekial already being aware both that McDaniel had been murdered and had cooperated.

Further, the evidence showed that Spann learned about McDaniel's cooperation from associates of Spann's father who learned about the cooperation from discovery in their case years before McDaniel's murder. The fact that Ezekial did not learn this information until after McDaniel was killed says nothing about Ezekial's credibility. Spann has offered no other reason to question the credibility of Ezekial's testimony.

Spann was also implicated in McDaniel's murder by Booker, who testified that Spann ordered him to kill McDaniel. Spann argues that Booker's testimony is not credible based on inconsistencies with Booker's grand jury and trial testimonies. These inconsistencies, however, do not directly undermine Booker's assertion that Spann ordered him to kill McDaniel. The inconsistencies are only relevant to evaluating Booker's credibility. But that was an issue for the jury to decide and is not a reason to reverse the verdict.

    **2.    King**

Booker also testified that Spann ordered the murder of George King. Spann argues that Booker's testimony is not credible because he claims that Spann ordered

8

the murder in order to "draw out" King's associate, Kenny Johnson, with whom Spann was battling over drug territory. Spann points out that Booker also testified that he had seen Kenny Johnson and George King together on the street the day before King was murdered. Spann contends that since Johnson was already "out," there was no need to draw him out, and Booker's testimony does not make sense, and is therefore not credible.

The government's brief recited in detail the evidence of the context of King's murder. *See* R. 1388 at 20-23. His murder was one of a number of murders and shootings—including Spann himself being shot—that occurred over the course of a week. This series of crimes was precipitated by Spann and his associates robbing one of Kenny Johnson's drug spots, and it culminated in the arson of a family home. This evidence clearly shows that King's murder was committed in the course of this violent dispute. In this context, what Booker precisely meant when he said Spann ordered King killed in order to "draw out" Johnson is not particularly relevant. Booker's ambiguous turn of phrase is not a strong reason to question his credibility. Booker's testimony, and the testimony of others involved, painted a picture of a war between Spann's faction and Johnson's faction over drug territory. Booker testified that Spann ordered King killed as part of this war and in order to maintain or strengthen his criminal enterprise. This evidence was sufficient for the jury to find that King's murder was a predicate for Spann's racketeering activity.

### 3. Willie Woods

Booker and Franklin testified that Spann told them he ordered Thompson and Foster to kill Woods. Booker said that Spann wanted him to be the get-away driver, whereas Franklin said that Spann thought he would be interested to observe the murder. Despite the two knowing each other for many years, neither Booker nor Franklin saw the other at the scene. On this basis, Spann argues that their testimonies conflict making them incredible and requiring acquittal on this count.

Spann vastly overstates the significance of any conflict between Booker's and Franklin's testimonies. It is not impossible that they were both present and did not notice each other. They were driving different cars. It was dark. *See* Tr. 1962 (Booker testified it was "nighttime"). The jury could reasonably conclude that Booker and Franklin missed each other because they were trying to remain inconspicuous and focused on the anticipated crime.

Regardless, Spann contends that their testimonies are incredible because he interprets their testimony to be that they both pulled up "behind the car with Spann in it," and he argues that it is impossible that they were both "in the exact same place at the exact same time on the day of the murder." R. 1320 at 4. Spann misstates the testimony. Booker followed Spann's car to the scene in his own car, and when they reached the location Spann's car "made a right" and Booker "made a left" leaving them on opposite sides of the street. Tr. 1963. Franklin arrived later after Spann called him to come watch the murder. When he arrived, Franklin "pulled on the side" of Spann's car, which was already there. Tr. 3135. Thus, the evidence is that Booker's

10

car and Franklin's car were on opposite sides of the street, after dark, in circumstances when they would have been trying to avoid drawing attention to themselves. Their testimony that they did not see the other present at the scene is at least plausible. It certainly is not an inconsistency that rises to the level of being a basis to find the jury's verdict so unreasonable as to overturn the verdict.

### 4. Rudy Rangel

Spann argues that the Court should order acquittal on the charge that Spann was culpable for the murder of Rangel because of contradictions in the testimony of Martise Nunery. Nunnery testified that he was contracted to kill Rangel, and that he in turn subcontracted the job to Spann and the Four Corner Hustlers. To the extent Nunnery's testimony contradicted other facts in evidence, none were so contradictory for the Court to remove evaluation of Nunnery's credibility from the jury.

Further, Nunnery's testimony was far from the only evidence implicating Spann in Rangel's murder. So did the testimony of at least four other witnesses (Coleman, Franklin, McCline, and Calcote). And Booker, Devine, and Mike Miller testified that Spann admitted to them that he orchestrated Rangel's murder. To top it off, Spann admitted his culpability on social media. Spann contacted a Chicago rapper and urged the rapper to highlight Spann in a song or video because Spann had Rangel killed. *See* R. 1388 at 29-30 (citing Gov. Ex. 300S).

Spann's only real attempt to address the admissions in evidence is to question them "in light of their ubiquity." R. 1320 at 9. Presumably, this argument is premised on the idea that most people would not admit the fact that they orchestrated murder,

11

let alone do so repeatedly. But video recordings of Spann in evidence show that he is not bashful about his violent behavior. Based on these recordings, it was reasonable for the jury to believe that Spann would repeatedly advertise his power to have people killed. Thus, the admissions in evidence, along with the witness testimony, were more than sufficient for the jury to find Spann guilty of Count III.

Spann also argues that the government failed to prove that Spann orchestrated the Rangel murder to enhance his membership in the enterprise. Spann points out that the government "has never provided any citation to a factually similar VICAR murder decision in which one gang leader killed a different gang leader with no internecine relationship between the gangs or any proof of rivalry or dispute between the two leaders as affording a basis to enhance one's membership in one's own enterprise." R. 1320 at 12. The facts of the Rangel murder, however, are unique. Rangel had developed relationships with well-known rap musicians. His name had been included in rap songs. As a relatively famous person within the world of Chicago drug dealing, the contract for his murder presented a unique opportunity to gain notoriety in this world. This is not mere conjecture. The evidence is that Spann perceived this opportunity and acted on it. Once the murder was committed, he told many people, and reached out to a rapper on social media. Spann perceived the potential reward of advancement to be so great that he risked admitting on the internet (for posterity) that he orchestrated the murder. From Spann's reckless attempt to gain credit for Rangel's murder, it was reasonable for the jury to find that

12

the potential for such city-wide and perhaps national notoriety also served to advance Spann's standing in his own enterprise.

* * * *

For these reasons, Spann's motions for judgments of acquittal on Counts I, II, and III, are denied.

## II. Motion for a New Trial

Spann argues that even if the Court denies his motions for judgments of acquittal, he is entitled to a new trial. A district court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is in the interest of justice "if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict." *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019).

Granting a new trial in the interest of justice is "reserved for only the most extreme cases," and courts approach such motions "with great caution." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021). That is because courts are "wary of second-guessing the determinations of both judge and jury." *Id.*; *see also United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) ("A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly.").

### A. Pretrial Denial of Motion to Dismiss Count III

As discussed, Count III charged Spann with the murder of Rudy Rangel. Spann was found not guilty of this murder in state court in 2008. Before trial in this Court, Spann moved to dismiss this count on double jeopardy grounds and because the

murder was not committed for the purpose of enhancing Spann's position in the charged RICO enterprise.

The Court rejected Spann's argument that his state case precluded his prosecution for the Rangel murder in this case because federal prosecutors exerted too much influence over the state case. *See* R. 961 at 7. That would have been the only valid basis for a double jeopardy claim because separate sovereigns prosecuted the cases, and the facts simply did not support a claim of collusion. The evidence at trial did not provide any basis to alter this finding.

On the pretrial motion, the Court also found that the allegations that Spann murdered Rangel on a contract and then advertised it "is the quintessential means of promoting an enterprise involved in criminal conduct." *See* R. 1081 at 3. Spann does not contend that the trial revealed the evidence to be other than what the government charged, which the Court considered on the motions to dismiss. *See* R. 1321 at 5 ("We rely principally on the arguments advanced in our earlier pleadings and incorporate them herein."). Because the trial did not change the evidentiary landscape regarding this issue, the Court's finding also remains unchanged.

As in his motion for acquittal, Spann also argues that the evidence of his involvement in the Rangel murder was insufficient because the witness's testimony on this charge seriously contradicted his prior testimony. *See* R. 1321 at 5. As discussed, this was an issue of credibility for the jury and it is not a basis for a new trial just as it is not a basis for acquittal on this count.

B.   Denial of Bill of Particulars

The Court denied Spann's pretrial motion for a bill of particulars. The Court found that "the *Santiago* proffer, the early disclosure of 3500 material and the very voluminous [discovery]" gave the defense "sufficient information to defend the case." R. 1048 at 3. Spann now focuses his argument on the contention that the "overwhelming evidence was that the acts were not done as part of the Four Corner Hustlers, the alleged enterprise," but "at best, might have been committed by part of a faction of that group." R. 1321 at 6. Spann argues that his motion "sought to focus the government's presentation of evidence, and to provide the Court with greater guidance" with respect to that issue. *Id.* Spann argues that "it is clear that the alleged enterprise, the [Four Corner Hustlers], had virtually nothing to do with any of the alleged extortionate acts, drug dealing, or acts of violence" the government charged. *Id.* at 6-7.

As discussed with respect to the motion for judgment of acquittal, the Court disagrees with Spann's assessment of the evidence. The evidence was sufficient to show that Spann was affiliated with the Four Corner Hustlers and committed the charged acts in furtherance of that enterprise. Spann's argument that the evidence showed he was a leader of one of several factions within the Four Corner Hustlers does not mean the evidence could *only* have shown that Spann's actions were in furtherance of his faction alone. There was sufficient evidence for the jury to reasonably conclude that Spann's faction was representative of the larger Four Corner Hustler enterprise. To the extent that a bill of particulars would have

15

"streamlined" the trial with respect to this issue, the evidence itself would remain unchanged. And that evidence was sufficient to support the jury's finding.

Further, the purpose of a motion pursuant to Federal Rule of Criminal Procedure 7(f) is not, as Spann puts it, to "focus the government's presentation of evidence." The purpose of such a motion is to ensure that the defendant has sufficient notice of the charged offenses. Here, the charges were clearly set forth in the indictment, and subsequent discovery further sharpened the evidence. Ordering a bill of particulars would not have given Spann any more clarity as to the charges against him then he already had.

### C. Denial of Motion to Suppress Wiretap Evidence

Spann reasserts arguments made in two pretrial motions to suppress evidence obtained through wiretaps. First, Spann and his co-defendants filed a pretrial motion arguing that the application for the warrants authorizing the wiretaps violated a state law requiring that the applicant be the "principal prosecuting attorney." The Court held a hearing on this issue and rejected the argument in a written opinion. *See* R. 573. Spann does not argue that the trial evidence alters the context of that decision, and he does not raise any new arguments the Court did not consider originally.

Next, Spann argues that the Court should have suppressed the wiretap evidence because four of the affidavits in support of the warrant applications were signed by a Chicago Police Officer who has since been convicted of making false statements in warrant applications and then stealing the money and drugs seized

16

during searches. The Court previously rejected this argument because Spann could not identify any particular aspect of the Officer's affidavits that was false. *See* R. 929. Spann adds nothing new to his argument on this motion. The Court's denial of Spann's motions to suppress the wiretap evidence is not a basis for a new trial.

### D. Evidence of Crimes Not Part of Racketeering Activity

Spann argues that the Court erred by admitting evidence of crimes that he contends were not party of the pattern of racketeering activity, including illegal possession of guns, use of a gun at a firing range, smuggling drugs into the Cook County Jail, intimidation of a Cook County Jail guard, and extortion of Spencer Taylor. All of these crimes, however, were consistent with the alleged purpose of the Four Corner Hustlers, which was to enrich its leaders and members through acts of violence, extortion, and drug trafficking. This includes the murders of Maximillion McDaniel, Carlos Caldwell, and Rudy Rangel, which Spann argues were "outside" the charged conspiracy. *See* R. 1321 at 10. As discussed, none of the evidence with which Spann takes issue was outside the conspiracy's scope.

Without objection from Spann, the jury was given the Seventh Circuit pattern instruction regarding the "pattern of racketeering activity" element. *See* R. 1197 at 32; Tr. 6437-38. The jury considered the evidence and found the government had proved the existence of a pattern of racketeering activity as defined by this instruction. Spann has not identified any error in this instruction and the jury reasonably found there was sufficient evidence to satisfy the definition. A new trial is not warranted.

17

### E. Evidence of Murder of Gus Johnson

Spann argues that because the *Santiago* proffer did not mention the murder of Gus Johnson, "it was irrelevant to the charged conduct and should not have been admitted in this case." R. 1321 at 9. But it is well-settled that the government may admit statements that were not included in the *Santiago* proffer. *See United States v. McClellan*, 165 F.3d 535, 553 (7th Cir. 1999) ("[W]e refuse to hold that the trial court committed error in admitting [witness's] testimony without first having required the Government to include her statement in its pre-trial 801(d)(2)(E) proffer."). And in any case, Gus Johnson's murder was relevant to show the larger gang war between Spann and Gus Johnson's brother, Kenny Johnson, and how the murder of George King—for which the jury was asked to make a special finding—was a result of that rivalry. Thus, the evidence of Gus Johnson's murder was properly admitted.

### F. Statements of Darren McCline and Delray Calcote

Both McCline and Calcote testified that individuals implicated in the murder of Rudy Rangel told them that they committed the murder on Spann's orders. Spann argues that these statements should not have been admitted because neither McCline nor Calcote were members of the Four Corner Hustlers so these statements could not be co-conspirator statements. *See* R. 1321 at 11-12. But a statement to an outsider may still be admissible as a co-conspirator statement where it "serve[s] as a salesmanship technique to enhance [the speaker's] position in the eyes of [the outsider] and give[s] confidence about the ability of the organization." *United States*

18

*v. Stephenson*, 53 F.3d 836, 845 (7th Cir. 1995); *United States v. Curtis*, 37 F.3d 301, 308 (7th Cir. 1994).

Furthermore, McCline's and Calcote's testimony was only a small part of the evidence that Spann ordered Rangel's murder. At least three witnesses testified that Spann told them he ordered the murder. And Spann admitted the murder in social media messages. To the extent McCline's and Calcote's statements should not have been admitted, that error was harmless in light of the substantial evidence against Spann on that Count.

### G. Totality of the Circumstances

Finally, Spann argues that all the evidentiary deficiencies he has identified in his motion for a new trial, combined with those identified in his motions for judgments of acquittal, when taken as a whole, create a basis to order a new trial. None of Spann's arguments, however, identified any material deficiencies in the evidence. Adding them together does not change that.

### Conclusion

Therefore, Spann's motion for a new trial [1321], as well as his motions for judgments of acquittal [1319] [1320], are denied.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: November 28, 2022

19