**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

UNITED STATES OF AMERICA

v.

LABAR SPANN

No. 17 CR 611

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

The troubling facts precipitating the government's agreement that a new trial for Defendant Labar Spann is necessary are sufficiently recounted in the parties' briefs on Spann's motions for a new trial and to dismiss the indictment. And in nearly all relevant ways, the facts are agreed, so the Court will not repeat them here at length. Suffice to say, the Assistant United States Attorney originally assigned to this case promised primary government witness Sammie Booker that the government would recommend a 25-year sentence in exchange for Booker's cooperation. Despite that promise, the AUSA elicited testimony from Booker in the grand jury that Booker's written plea agreement called for a recommendation within a range of 25 to 35 years, which is of course different than the 25-year recommendation he was orally promised, which was never mentioned in the grand jury. The government concedes that this testimony was false and that the AUSA knew it at the time. *See* R. 1664 at 6. Nevertheless, as the Court explains below, this is not a basis to dismiss the indictment, so Spann's motion is denied.

Dismissal of an indictment for misconduct in the grand jury is warranted only in limited circumstances. The government's knowing presentation of false testimony

to the grand jury is one of the few circumstances that *may* justify dismissal of an indictment. *See United States v. Williams*, 504 U.S. 36, 46 n.6 (1992). However, the government's knowing presentation of false testimony to the grand jury can only form the basis of a dismissal where the defendant was prejudiced. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).

Prejudice occurs if the improper testimony at issue "had an effect on the grand jury's decision to indict." *Id.* And there is an effect on the grand jury's decision only when it was "substantially influenced, or [when] there is grave doubt that the decision to indict was substantially influenced, by testimony which was inappropriately before it." *See United States v. Useni*, 516 F.3d 634, 656 (7th Cir. 2008); *United States v. Roth*, 777 F.2d 1200, 1204 (7th Cir. 1985) (discussing "decisions that hold that before a conviction will be set aside because the prosecutor knowingly used perjured testimony to obtain the indictment the defendant must show that the indictment would not have been issued had the perjured testimony not been used").

There is no basis to find that Booker's false testimony substantially influenced the grand jury's decision to indict. A grand jury's decision to indict is based on whether the government has presented sufficient evidence to establish probable cause that the defendant is guilty. *See Albright v. Oliver*, 510 U.S. 266, 297 n. 11 (1994). The government has an obligation to present sufficient evidence to satisfy this burden. The government, however, does not have an obligation to present exculpatory or impeaching evidence to the grand jury. *See Williams*, 504 U.S. at 55 (concluding that courts "have no authority to prescribe" a duty to disclose exculpatory evidence to

2

the grand jury); *see also United States v. Gardner*, 516 F.2d 334, 338-39 (7th Cir. 1975) ("[T]he government on its own need not produce evidence [in the grand jury] that undermines the credibility of its witnesses[.]"). In this context, false testimony that implicates a witness's credibility on a non-substantive issue is unlikely to affect a grand jury's decision to indict. *See Useni*, 516 F.3d at 656 (affirming denial of motion to dismiss indictment where false grand jury testimony was "irrelevant" to decision to indict).

Booker's false testimony regarding his cooperation agreement carries little weight in the context of the extensive evidence presented to the grand jury, both impeaching Booker's character and of Spann's guilt. Although the grand jury was misled regarding the details of Booker's cooperation agreement, they *were* told he was a cooperating witness and that he had a deal with the government for a recommendation of a particular sentencing range. Further, the undisclosed promise was not outside the disclosed range but was merely the low end of the disclosed range. Certainly important information, but not so outrageously false that it would have affected the decision to indict.

Beyond the cooperation agreement, Booker himself testified that he murdered and robbed people and trafficked in large amounts of illegal drugs, all of which is negative character evidence of the greatest magnitude. In terms of assessing Booker's character and credibility, his false testimony regarding the finer details of his cooperation agreement pales in comparison to the other evidence of Booker's conduct, including his many prior convictions. The government did not present Booker to the

grand jury as an honest citizen testifying because it was his civic duty. Far from it. It was abundantly clear to the grand jury that he was a serial murderer who was only testifying in exchange for a significant break in any sentence for his crimes.

More importantly, Booker did not testify falsely about any of the substantive evidence the government presented to the grand jury to establish probable cause that Spann committed the crimes alleged in the indictment. And even if the false testimony had undermined a piece of that evidence (which it did not), the government presented extensive evidence to the grand jury of Spann's alleged crimes beyond Booker's testimony. The government accurately summarizes that evidence in its brief. The Court heard that evidence at trial. That evidence easily met the probable cause standard to justify indictment, and Spann does not suggest otherwise.

Rather, Spann's argument is that Booker's false testimony, combined with the fact that it was elicited without correction by the government, would have created "doubt" in the grand jurors' minds that "would have resulted in a refusal to indict." R. 1668 at 3. He suggests it was not simply the fact of the 25-year sentencing recommendation, but rather the false testimony about the recommendation, that would have been critical to the grand jury's deliberations. This argument, however, ignores the grand jury's task which is to determine whether the evidence is sufficient to establish probable cause. In this context, the fact that Booker misrepresented the details of his cooperation agreement is a relatively minor fact. Certainly, the fact that Booker testified falsely to the grand jury is relevant material for impeachment of his trial testimony, which, because it was denied to Spann's defense, necessitates a new

4

trial. And the government's misconduct is no small error with respect to its responsibility to properly prosecute crimes, and the Court's responsibility to ensure the fair administration of justice. However, from the perspective of a grand juror tasked with determining whether there was sufficient evidence to find probable cause of Spann's guilt, Booker's false testimony that he was promised a sentencing recommendation of a range of 25 to 35 years, as opposed the specific 25 year recommendation he was actually promised, has relatively little relevance to the credibility of Booker's testimony and even less relevance to whether there was probable cause to indict Spann.

Unlike grand jury testimony, impeachment evidence is an important part of a trial jury's decision-making process. In this case, the government's conduct deprived Spann of the opportunity to impeach Booker at trial with the facts that he lied to the grand jury (as well as at his change of plea hearing), and that his cooperation deal was even more favorable than what was represented. But Booker's false testimony regarding his cooperation agreement did not prejudice Spann by substantially influencing the grand jury's decision to indict, and the Court does not have any serious doubt that it had that effect.

Separate from the government's conduct leading to Booker's false testimony to the grand jury, Spann argues that the government's conduct which led to Booker repeating that false testimony at trial is also a basis to dismiss the indictment. However, in the namesake case for the right underlying Spann's motion, the Supreme Court held that a new trial was the proper remedy where the government failed to

disclose the prosecutor's unauthorized promise to key witness, causing false testimony at trial. *See Giglio v. United States*, 405 U.S. 150, 150-55 (1972). And as the government correctly points out, *Giglio*, and its precursor *Brady v. Maryland*, are fundamentally trial rights, violations of which can be remedied with a new trial.

Some Circuits have held that it might be possible for the government's conduct to be "so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." *Conley v. United States*, 5 F.4th 781, 799 (7th Cir. 2021). But the Seventh Circuit has "repeatedly rejected the existence of an outrageous conduct defense." *Id.* And in any event, even assuming the government knowingly permitted Booker to repeat his false testimony at trial (and the facts in the record do not permit that inference), there would still not be a basis to find that the government acted "outrageously."[1]

For reasons discussed above, the finer details of Booker's cooperation agreement likely would have had relatively little relevance to the jury's assessment of Spann's guilt, considering the extent of the evidence they were presented impeaching Booker's testimony, and the strong evidence they had of Spann's guilt apart from Booker's testimony. No doubt Booker was a key witness at trial, but he was by no means the only witness who testified to events relating to Spann's guilt. While Booker's false testimony to the grand jury, and the more favorable cooperation agreement, are certainly relevant to Booker's credibility, they are not relevant to the

---

[1] Because dismissal of the indictment would not be appropriate even if the government knowingly permitted Booker to repeat his false testimony at trial, no evidentiary hearing is necessary to determine whether that occurred.

substantive facts of the crimes Spann was charged with. The Court is hard pressed to see how dismissal of Spann's indictment would be appropriate where the misconduct at issue does not concern the affirmative evidence of Spann's guilt.

For these reasons, dismissal of the indictment is not appropriate, and Spann's motion to dismiss the indictment [1633] is denied. The new trial the government has wisely agreed to is a sufficient and appropriate remedy for the government's misconduct. If anything, a new trial might appear to be a disproportionate remedy considering the relatively light weight of the new impeachment evidence against Booker compared to the great amount of impeachment materials the defense already had. Nevertheless, a new trial is a necessary remedy for and consequence of the government's unforced error. Saying that the error was avoidable is an understatement. It should not have happened. Whatever the characterization, the result is a disservice to the victims and their families who will be forced to endure another trial.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: April 4, 2025

7